IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MELVA ZUNIGA and ISABEL CRUZ, AS NEXT FRIEND OF APH (MINOR) INDIVIDUALLY, AND AS LEGAL REPRESENTATIVE OF THE ESTATE OF ARTURO HERNANDEZ ZUNIGA | § § § § § § | CIVIL ACTION NO. _____ |
| VS. | § § | RULE 9(h) – ADMIRALTY |
| CAPT. QUINA, INC., MARIO ADALBERTO CONTRERAS, and JUAN G. RODRIGUEZ | § § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW Plaintiffs MELVA ZUNIGA and ISABEL CRUZ, as next friend of APH, a minor, individually and as legal representative of the Estate of Arturo Hernandez Zuniga, complaining of CAPT. QUINA, INC., MARIO ADALBERTO CONTRERAS, and JUAN G. RODRIGUEZ, Defendants, and for cause of action, would respectfully show unto this Honorable Court as follows:

### I. PARTIES

1. Plaintiffs are residents of Brownsville, Texas.

2. Defendant Capt. Quina, Inc. is a Texas corporation, doing business in this District, Division, and the state of Texas for the purpose of accumulating monetary profit. Defendant may be served with process through its Vice-President, Mario Adalberto Contreras, at 1577 Pinion Drive, Brownsville, Texas 78526-1209 or wherever found.

3. Defendant Mario Adalberto Contreras is an individual and resident of the State of Texas, and may be personally served with process at 1577 Pinion Drive, Brownsville, Texas 78526-1209, or wherever found.

4. Defendant Juan G. Rodriguez is an individual and resident of the State of Texas, and may be personally served with process at 24021 W. U.S. Highway 281, San Benito, Texas 78586, or wherever found.

## II. JURISDICTION

5. The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. §1333 because the suit involves admiralty and maritime jurisdiction. This case is brought pursuant 28 U.S.C. § 1333, the general maritime law, the Jones Act now codified at 46 U.S.C. § 30104, and within the meaning of Rule 9(h) – Admiralty, Federal Rules of Civil Procedure.

## III. VENUE

6. Venue is proper in this matter pursuant to the admiralty and maritime laws of the United States, Rule 82 Fed. R. Civ. P.

## IV. FACTS

7. At all material times hereto, Defendants owned, operated and/or crewed the commercial fishing vessel *Mario Arturo II,* the vessel involved in the incident made the basis of this suit.

8. At all material times hereto, Decedent Arturo Hernandez Zuniga, was employed by Defendants as a member of the crew of the CFV *Mario Arturo II,* and was acting in the course and scope of his employment with Defendants. Decedent was piloting the *Mario Arturo II* at the time

it began taking on water, and died as a consequence of having to abandon the vessel when it sank. Decedent suffered substantial pre-death physical pain and suffering and mental anguish.

9. On or about December 1, 2010, while the CFV *Mario Arturo II* was engaged in navigation and commerce on a commercial fishing voyage, the vessel began taking on water. The vessel's de-watering equipment was not able to keep up with the rate of flooding, and the vessel sank on December 2, 2010, roughly eight miles offshore of Galveston, Texas.

10. Plaintiff Melva Zuniga is the mother of Decedent and brings her claim for the wrongful death of her son.

11. Plaintiff Isabel Cruz is the mother of APH, the minor son of Decedent. She brings this suit in her capacity as next friend of the minor, which minor is seeking damages for the wrongful death of his father, and survival damages for the conscious pain and suffering and mental anguish suffered by his father prior to his death. As the surviving minor son of the Decedent, the minor is authorized to act as a legal representative of the Estate of Decedent, through his next friend, Isabel Cruz. There is no estate administration pending and none is necessary.

12. Defendants operated the vessel in an extremely poor, unseaworthy condition subjecting Decedent to unnecessary risk. The CFV *Mario Arturo II* was inspected, out of the water, after the marine casualty occurred. Attending Coast Guard investigators and marine inspectors determined that the hull was in poor condition and that an incident had occurred in the preceding eighteen months which caused damage to the rudder assembly. The condition of the hull was characterized as a latent unsafe condition. It was determined that the watertight envelope and internal compartment watertight integrity of the vessel failed. The failures resulted in the flooding of the CFV *Mario Arturo II*. Prior to the ill-fated voyage, improper and ineffective repairs had been

made to several sections of the hull of the vessel. One example of the improper repairs made to the vessel was a broom stick handle jammed into a hole in the hull. The *Mario Arturo II's* fixed bilge pumping system was not operational at the time of the sinking. The Defendants provided a portable pump to the crew prior to the vessel's departure from Galveston, rather than fixing the bilge pumping system. The *Mario Arturo II* was last boarded by the U.S. Coast Guard on January 11, 2009. During that boarding, the Coast Guard determined that the vessel did not have a functioning high water alarm, and was unable to sound an audible alarm for the high water alarm system. That condition was not repaired prior to the ill-fated voyage. Following the sinking the Coast Guard identified at least five holes in the hull, ineffective hull repairs, and cement used to cover wastage on the deck. The deficiency history of the *Mario Arturo II,* as determined by Coast Guard boardings and dockside fishing vessel exams, had uncovered 95 deficiencies related to the vessel, none of which were resolved or corrected. The *Mario Arturo II* was not only unseaworthy, it was a sinking waiting to happen, and the Decedent was required to operate the vessel under what, at best, can be called hazardous conditions. The lack of a functioning high water alarm, contributed to the cause of the casualty because by the time the Decedent became aware of the flooding of the vessel, and notified the crew, water had almost reached deck level in the stern of the vessel, at which point it was impossible to eradicate the flooding and keep the vessel afloat. The portable pump the Defendants provided to the vessel was not able to keep up with the rate of flooding. Once the flooding reached the deck level, the vessel was quickly overcome and began to sink rapidly by its starboard stern.

      13.     Decedent suffered severe and disabling personal injuries and ultimately death that were due to the unseaworthiness of their vessel, as described in the preceding paragraph, and/or due to the negligence and/or gross negligence of Defendants, including but not limited to:

    (a)    failing to maintain the vessel and her appurtenances and/or equipment in a safe and reasonable state of repair;

    (b)    failing to take reasonable precautions for Decedent's safety;

    (c)    failing to provide Decedent with a reasonably safe place to work;

    (d)    failing to warn Decedent of known and/or existing hazards;

    (e)    failing to provide proper equipment to Decedent; and

    (f)    other acts and/or omissions to be shown at trial herein.

The Plaintiffs' and Decedent's damages were caused as a direct and proximate result of the unseaworthiness of the vessel and/or the Defendants' negligence an/or gross negligence.

## V. COUNT 1 - JONES ACT

14.    Decedent's injuries and resultant death were suffered in the course of his employment and were caused by the negligence and/or gross negligence of Defendants, their officers, agents, or employees.

## VI. COUNT 2 - UNSEAWORTHINESS

15.    Decedent's injuries and resultant death were caused by Defendants' breach of their absolute duty to furnish a seaworthy vessel.

## VII. ALTER EGO ALLEGATIONS

16.    The foregoing paragraphs are re-alleged as though fully again set forth.

17.    Defendants Mario Adalberto Contreras and Juan G. Rodriguez, as individuals, are the alter egos of Defendant Capt. Quina, Inc., and neither should be allowed to rely on the corporate fiction to shield himself from fault and liability to Plaintiffs.

18. Despite the elaborate corporate structure set up by Defendants Mario Adalberto Contreras and Juan G. Rodriguez, they were and are, in reality, the true and beneficial owners of Defendant Capt. Quina, Inc. and the vessel *Mario Arturo II*. The Capt. Quina, Inc. entity was the mere instrumentality or conduit through which Defendants Mario Adalberto Contreras and Juan G. Rodriguez conducted their business, and Defendants Mario Adalberto Contreras and Juan G. Rodriguez, along with Capt. Quina, Inc., are accordingly liable for their acts and failures to act.

19. The corporate form of Capt. Quina, Inc. should be disregarded, for the following reasons, among others:

(a) failing to disregard the entities would allow the corporate entities to perpetrate a fraud on Plaintiffs and others, in that Capt. Quina, Inc. can reap the benefits of the corporate form, but avoid responsibility when that entity is are called upon to answer for just and valid claims;

(b) failing to disregard the separateness of the entities would allow Defendants Mario Adalberto Contreras and Juan G. Rodriguez to evade existing legal responsibilities for liabilities which would otherwise be placed in undercapitalized and/or revoked or abandoned entities;

(c) because, on information and belief, the entities and Defendants Mario Adalberto Contreras and Juan G. Rodriguez commingled assets among each other, and not requiring Defendants Mario Adalberto Contreras and Juan G. Rodriguez to be responsible for the entity with which they commingled assets would work an injustice on the Plaintiffs; and/or

(d) because, on information and belief, Capt. Quina, Inc., and Defendants Mario Adalberto Contreras and Juan G. Rodriguez, entered into transactions not at arms length, and without security or capitalization, which allowed Defendants Mario Adalberto Contreras and Juan G. Rodriguez to capitalize on and benefit from these transactions, but where continued reliance on the corporate fiction will result in an injustice to Plaintiffs.

20. For the foregoing reasons, among others, Defendant Capt. Quina, Inc., and Defendants Mario Adalberto Contreras and Juan G. Rodriguez, are not entitled to maintain, or

benefit from, the fiction of their separate existence, which would be unfair to Plaintiffs, and would promote fraud and work an injustice.

## VIII.  DAMAGES

21.  As a direct and proximate result of Defendants' conduct, Plaintiffs suffered the following damages, including, but not limited to:

- (a) general damages to the minor, for the loss of care, comfort, support, society and companionship arising out of the wrongful death of his father, Decedent Arturo Hernandez Zuniga, for which Isabel Cruz sues, as mother and next friend of the minor;

- (b) special damages for the loss of support for the minor, occasioned by the wrongful death of his father, Decedent Arturo Hernandez Zuniga, for which Isabel Cruz sues, as mother and next friend of the minor;

- (c) special damages for wearing apparel, jewelry, and other personal property, and funeral and burial expenses of Decedent Arturo Hernandez Zuniga, for which Isabel Cruz sues, as mother and next friend of the minor, who is the legal representative of the estate of Decedent;

- (d) general damages for Plaintiff Melva Zuniga for the loss of care, comfort, support, society and companionship arising out of the wrongful death of her son, Decedent Arturo Hernandez Zuniga;

- (e) general damages and special damages for the personal injury of Decedent Arturo Hernandez Zuniga which occasioned his death, for his awareness and fear of impending doom, and pre-death pain and suffering, for which Isabel Cruz sues, as mother and next friend of the minor, who is the legal representative of the estate of Decedent; and

- (f) special damages for the destroyed earning capacity, and net loss to the estate of Decedent Arturo Hernandez Zuniga, occasioned by his premature death in excess of any support loss recovered by the minor as requested above, for which Isabel Cruz sues, as mother and next friend of the minor, who is the legal representative of the estate of Decedent.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and for judgment against Defendants, jointly and severally for actual

damages in an amount exceeding the jurisdictional limits of this Court; punitive damages and attorney's fees, prejudgment and postjudgment interest; costs of suit; and all other relief to which they may be entitled.

                                                 Respectfully submitted,

                                                 */s/ Francis I. Spagnoletti*
                                                 Francis I. Spagnoletti
                                                 SBN 18869600 / Federal ID 5369
                                                 401 Louisiana Street, 8th Floor
                                                 Houston, Texas 77002
                                                 Telephone:   713-653-5600
                                                 Facsimile:    713-653-5656
                                                 Email:         fspagnoletti@spaglaw.com

**OF COUNSEL**:

SPAGNOLETTI & CO.

ATTORNEYS FOR PLAINTIFFS